**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

WILLIAM D. PETRY, JR.,

           Plaintiff,                            06cv0326

      v.                                     **ELECTRONICALLY FILED**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

**MEMORANDUM OPINION**

**July 27, 2006**

    **I.**     **Introduction**

    Plaintiff William D. Petry, Jr. brings this action pursuant to 42 U.S.C. § 405(g) of the Social

Security Act ("Act"), seeking review of the final determination of the Commissioner of Social

Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and

supplemental security income ("SSI), under titles II and XVI of the Act. Consistent with the

customary practice in the Western District of Pennsylvania, the parties have submitted cross motions

for summary judgment and the record developed at the administrative proceedings.

    After careful consideration of the Administrative Law Judge's ("ALJ's") Decision, the

memoranda of the parties, and the entire record, the Court finds the ALJ's decision is supported by

substantial evidence, and therefore will deny Plaintiff's motion for summary judgment, grant the

Commissioner's motion for summary judgment, and affirm the decision of the Commissioner.

## II.     Procedural History

Plaintiff applied for DIB and SSI on January 7, 2004 alleging disability since December 31, 2002, due to back pain and a panic disorder.  R. 63-65.  The application was denied initially and upon reconsideration, and on October 20, 2004, a hearing was held before an ALJ, at which plaintiff appeared, as did a vocational expert.  At that time, and upon questioning by the ALJ, plaintiff waived his right to counsel.  Nonetheless, because there was insufficient medical evidence, the ALJ sent plaintiff for a physical evaluation and mental evaluation and held a supplemental hearing on April 12, 2005.  On April 12, 2005, plaintiff and a vocational expert testified.  Again, upon questioning by the ALJ, and after a letter was sent to plaintiff explaining his right to representation, plaintiff waived his right to counsel  On June 23, 2005, the ALJ issued a decision denying plaintiff's clam for DIB and SSI.  R. 14-31.

Specifically, the ALJ found that plaintiff has an impairment or a combination of impairments considered severe based on 20 C.F.R. § 404.1520(b), but these impairments were not so severe as to qualify as a Listed Impairment in 20 C.F.R. Appendix 1, Subpt. P, Regulation No. 4. R. 24.

Specifically, the ALJ made the following findings:

1.     The claimant was insured for Title II benefits through September 30, 2004.  Thus, he was insured at all relevant times.

2.     The claimant has not engaged in work activity since the alleged onset of disability.

3.     The claimant has an impairment or a combination of impairments considered "severe" based on the requirement in the Regulations 20 CRF § § 404.1520(b) and 416.920(b)).

4.     These medically determinable impairment do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P. Regulation No. 4.

5.    The undersigned finds the claimant's allegations regarding his limitations are not totally credible.

6.    The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments.

7.    The claimant is 44 years old, a "younger individual between the ages of 18 and 44."

8.    The claimant has a high school education.

9.    The claimant has the following residual functional capacity: light work.

10.    The claimant has past relevant work as a construction remodeler. That job was performed at the medium level of exertion (20 CFR § § 404.1565 and 416.965).

11.    Based on vocational expert testimony, the claimant's medically determinable impairments prevent the claimant from performing his past relevant work.

12.    Based on vocational expert testimony, there are other jobs the claimant is capable of performing. Examples of such jobs are: yarn sorter of which there are 84,000 in the national economy and 1,700 in the states; work as a laundry worker of which there are 69,000 in the national economy and 1,500 in the state and work as an assembler of small products of which there are 155,000 in the national economy and 2,100 in the state. The vocational expert testified that all of these jobs are at the light level of exertion.

13.    The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR § § 404.1520(e) and 416.920(e)).

R.30-31.

Plaintiff filed a request for review, and after the appeals council denied his request for review, the ALJ's decision became the final decision of the Commissioner. Thereafter, plaintiff timely commenced this action, which now is before this Court on the cross motions for summary

judgment, under Rule 56 of the Federal Rules of Civil Procedure.

### III.    Standards of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by 42 U.S.C. §§ 405(g)[1] and 1383©)(3)[2].  Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), disability decisions rendered under Title II are pertinent and applicable to those rendered under Title XVI.  *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990).

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995); *Wallace v. Secretary of HHS,*

---

[1]

Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .

42 U.S.C. § 405(g).

[2]

Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Ventura*, 55 F.3d at 901 *quoting Richardson*; *Stunkard v. Secretary of the Dep't of Health and Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).  The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner.  *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983).

In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the ALJ's decision by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records

found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence, especially when testimony of the claimant's treating physician is rejected. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician: "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports" and other objective medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

To demonstrate disability under Title II or Title XVI of the Act, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1); 42 U.S.C. § 1383c(a)(3)(A). When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes a five-step sequential

6

evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995).  *See Sullivan*, 493 U.S. at 525.  The United

States Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*,

186 F.3d 422 (3d Cir. 1999) as follows:

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520©). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.

> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (emphasis added; certain citations omitted).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to

qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled *per se* because he or she

meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R.

Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where the claimant is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461, *citing* 42 U.S.C. § 423 (d)(2)(A). In order to prove disability under this second method, claimant first must demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that claimant is unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the '[Commissioner] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. §

8

423(d)(2)(B), and 20 C.F.R. § § 404.1523, 416.923.

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523 (2002), Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Thus, when a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the [Commissioner] denies the payment of disability benefits." *Bittel,* 441 F.2d at 1195.  Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d) (2002). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a Listed Impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the Listed Impairments. *Fargnoli,*  247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [believed necessary] to make a sound determination." *Ferguson*, 765 F.2d at 36.

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d

62, 65 (3d Cir. 1987), *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v.*

*Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir.

1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability

to perform even light or sedentary work when this testimony is supported by competent evidence.

*Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on*

*Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists,

the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which

it affects the individual's ability to work.  This evaluation obviously requires the ALJ to determine

the extent to which a claimant is accurately stating the degree of pain or the extent to which he or

she is disabled by it.  *See* 20 C.F.R. § 404.1529©) (2002); 20 C.F.R. § 416.929.  *Hartranft v. Apfel*,

181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such

a conclusion must be indicated in his or her decision.  *See Cotter*, 642 F.2d at 705. The United States

Court of Appeals for the Third Circuit has stated:  "[I]n all cases in which pain or other symptoms

are alleged, the determination or decision rationale must contain a thorough discussion and analysis

of the objective medical and the other evidence, including the individual's complaints of pain or

other symptoms and the adjudicator's personal observations.  The rationale must include a resolution

of any inconsistencies in the evidence as a whole and set forth a logical explanation of the

individual's ability to work." *Schaudeck*, 181 F.3d at 433, *quoting* Social Security Ruling ("SSR")

95-5p.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence

in order to be afforded significant weight.  *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195.  While

"there must be objective medical evidence of some condition that could reasonably produce pain,

*there need not be objective evidence of the pain itself.*" *Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067.  Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain *without contrary medical evidence. Ferguson*, 765 F.2d at 37; *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence.  Instead, the Secretary must present *evidence to refute the claim.  See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory, medical evidence, not on the ALJ's own credibility judgments, speculation or lay

11

opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

      Moreover, the Commissioner/ ALJ

> must "explicitly" weigh all relevant, probative and available evidence. . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must *consider* all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43 (although ALJ may weigh conflicting medical and other evidence, he must give some indication of the evidence he rejects and explain the reasons for discounting the evidence; where ALJ failed to mention significant contradictory evidence or findings, Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. . . . Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

      However, a medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will

determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (I) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination or decision of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) and 20 C.F.R. §416.927(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) and 20 C.F.R. §416.927(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to "controlling weight." 20 C.F.R. § § 404.1527(b), (d) and 416.927(b), (d) (2002).[3] Medical opinions

---

[3]        Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. § 404.1527(d) (2002) and § 416.927(d). Subsection (d)(2) describes the treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual  examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is

on matters reserved for the Commissioner are not entitled to "any special significance," although they always must be considered. 20 C.F.R. § § 404.1527 (e)(1-2) and 416.927 (e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-29, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[4] these Social Security Rulings require that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues

_____

well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in  paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion*.

20 C.F.R. § § 404.1527(d)(2) and 416.927(d)(2) (2002) (emphasis added).

[4]      SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to past relevant work, and whether an individual is "disabled" under the Act.

that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion also is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2); 20 C.F.R. § 416.927 (d)(2). *See* note 3, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6); 20 C.F.R. § 416.927 (d)(1-6).

<u>State Agency Medical and Psychological Consultants</u>

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I); 20 C.F.R. § 416.927 (f)(2)(I). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and

15

Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

## IV.    Discussion

Plaintiff alleges that the ALJ improperly determined his residual functional capacity, that the ALJ failed to secure an adequate waiver of counsel and failed to fully develop the record, and that the ALJ improperly relied on an incomplete hypothetical question.  The Court will address these arguments seriatim.

Plaintiff first alleges that the ALJ's assessment of plaintiff's residual functional capacity for light work was not supported by substantial evidence.  In support thereof, plaintiff argues that there is a significant amount of evidence indicating very serious problems with his low back and his mental health.  While this Court agrees that the medical evidence demonstrates that plaintiff suffers from the above impairments, as the ALJ pointed out, there is no objective medical evidence that would support a finding that plaintiff is disabled from all work.  On the contrary, the objective medical evidence establishes that plaintiff is limited to light duty work, and therefore, there is substantial evidence to support such a finding.[5]

---

[5]Although the ALJ mistakenly stated that plaintiff sees his relatives 4-5 times per week, when plaintiff actually reported he saw his family 4-5 times per year, taken together with the other activities of daily living and the objective medical evidence, there is still substantial evidence to support the conclusion that plaintiff maintains the residual functional capacity to perform light duty work.  In making that determination, the ALJ considered the reports and/or

Plaintiff next alleges that the ALJ failed to secure an adequate waiver of counsel and to adequately develop the record. As stated above, at the first hearing on October 20, 2004, the ALJ informed plaintiff of his right to representation and at that time, plaintiff waived representation. R. 224-225. Prior to that hearing, on April 16, 2004, the Commissioner informed plaintiff by letter that he could obtain a representative to assist him with his claim and that he could receive free legal services or enter a contingency fee agreement with an attorney. R. 217. Finally, at the April 12, 2005 hearing, the ALJ again informed plaintiff of his right to counsel, a right which plaintiff again knowingly waived. R. 236.

The regulations specify that if a claimant is not represented at the state agency level and receives a decision that is partially or whole adverse, the Commissioner will notify the claimant of his or her options for obtaining representation, and that " a legal services organization may provide [him or her] with legal representation free of charge." 20 CFR § § 404.1706, 416.1506. The Commissioner/ALJ complied with those duties on not one, but three separate occasions. Further, the ALJ even questioned plaintiff regarding whether he could read the papers that were sent to him, to which plaintiff responded that he could. R.226-227. Accordingly, this Court finds that plaintiff was fully informed of his right to counsel and voluntarily waived that right.

Plaintiff also alleges that because the ALJ mentioned at the first hearing that he would send plaintiff for consultation with other physicians and he would also obtain x-rays, and no x-rays were in fact performed at that time, that the ALJ failed to fully develop the record.

---

records of Ellen Eno, Ph.D, Clyde Rouse, M.D., Andre Fontana, M.D., Lynn Kirkland, M.D. and Kimberly Whitchard, M.D. and accurately concluded that "no credible treating or consultative physician has opined that the claimant was disabled because of any physical and/or mental condition or from any resulting symptoms." R. 23

17

According to the Act, although an ALJ may call on the services of a medical advisor in considering the nature and severity of a claimant's impairments, there is no requirement to do so. 20 C.F.R. § 404.1527(f)(2)(iii).  Here, the ALJ did elicit the consultative services of an orthopedic physician (Dr. Andrea Fontana) who saw plaintiff on November 16, 2004 and opined that plaintiff suffered from probable degenerative disc disease, and that plaintiff could perform a range of light work. R. 183-185.  The x-ray that was taken of plaintiff's back revealed degenerative disc disease. Accordingly, because the x-ray did not reveal that plaintiff had greater limitations than the ALJ found, this Court concludes that ALJ sufficiently developed the record in this case.

Finally, plaintiff contends that the ALJ relied on an incomplete hypothetical.  The ALJ included the following limitations (in addition to others) in his hypothetical: that plaintiff could do light work; that he would be mildly upset or affected by responses with supervisors and customers, that there would be no effect with dealing with changes in a routine work setting, understanding or remembering simple one/two step instructions, understanding, remembering and carrying out detailed, complex instructions; and that there would be limitations with regard to his attention and concentration for at least two hours.  R. 243-244.  Plaintiff argues that the ALJ's hypothetical should not have included the limitations that plaintiff can perform light duty work.  This Court has already found that this limitation is supported by substantial evidence.  Therefore, it was appropriate for the ALJ to include such limitation in his hypothetical.

Finally, plaintiff argues that with regard to his mental impairments, the hypothetical was incorrect because a psychologist (Dr. Eno) reviewing his case on April 15, 2004 indicated that could only remember and carry out simple instructions, that frequent contact with the general public should not be a usual part of his job, and that changes in his work setting should be infrequent.  R. 170.

18

Although plaintiff is correct that the consultative examiner opined that plaintiff was so limited, the ALJ relied more heavily on the opinions of Dr. Kimberly Whitchard, who evaluated plaintiff, and Dr. Rouse, who treated plaintiff, and found limitations which were wholly consistent with the above hypothetical.  In order to consider a vocational expert's testimony as valid, the questions posed to a vocational expert must "accurately portray the claimant's individual physical and mental limitations." *Schonewolf v. Callihan*, 972 F.Supp. 277, 289 (D.N.J. 1997), citing *Podedworney v. Harris,* 745 F.2d 210 (3d Cir. 1984).  This Court finds that the hypothetical posed to the ALJ contained an accurate portrayal of plaintiff's limitations, and accordingly, the ALJ did not error in failing to include some of the limitations set forth by one examiner when those limitations were not supported by other substantial evidence of record.

## V.      Conclusion

The Court has reviewed the ALJ's findings of fact and decision, and determines that the findings are supported by substantial evidence.  Accordingly, the Court will deny plaintiff's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the decision of the ALJ/ Commissioner.

An appropriate order will follow.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:      All counsel of record